**SBAITI & COMPANY PLLC**
Mazin A. Sbaiti, Esq. (CA Bar No.: 275089)
E: mas@sbaitilaw.com
Dallas Arts Tower
3102 Maple Avenue, Suite 400
Dallas, Texas 75201
P: (214) 214-3400
F: (214) 853-4367

**SBAITI & COMPANY NJ LLC**
Christopher L. Ayers, Esq. (*Pro Hac Vice Forthcoming*)
E: Chris.Ayers@sbaitilaw.com
100 Mulberry Street
3 Gateway Center, Suite 1102
Newark, New Jersey 07102
P: (973) 954-2000
F: (973) 954-9710

*Attorneys for Plaintiffs and the Proposed Class*

[*Additional Attorneys on Signature Page*]

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER TAYLOR and KRYSTAL CHAMBERS, individually, and on behalf of all others similarly situated, | Case No.: 3:36-cv-00003 |
| *Plaintiffs,* | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| v. | **CLASS ACTION** |
| ABBOTT DIABETES CARE INC. and ABBOTT LABORATORIES, | |
| *Defendants.* | |

Plaintiffs Christopher Taylor and Krystal Chambers ("Plaintiffs"), individually and on behalf of all others similarly situated, bring this Class Action Complaint against ABBOTT DIABETES CARE INC. and ABBOTT LABORATORIES (collectively "Abbott" or "Defendants"). Plaintiffs make the following allegations upon personal knowledge as to their own acts, and as to all other matters upon information and belief, based upon the investigation made by the undersigned attorneys, as follows:

**INTRODUCTION**

1.    This consumer class action arises from Abbott's systematic concealment of critical manufacturing defects in its FreeStyle Libre 3 and FreeStyle Libre 3 Plus continuous glucose monitoring ("FreeStyle CGM") sensors while simultaneously making false and misleading representations regarding the accuracy, reliability, and safety of these life-sustaining medical devices.

2.    Abbott manufactured, marketed, distributed, and sold defective glucose monitoring sensors that provided incorrect low glucose readings to diabetes patients, Plaintiffs and Class members, who relied upon these devices to make potentially life-or-death treatment decisions regarding insulin administration and carbohydrate intake.

3.    Consumers, including Plaintiffs and the other Class Members, paid a substantial premium for the FreeStyle CGM based on Abbott's misrepresentations and omissions, only to receive products that were unreliable, failed to perform as promised, was subject to government recall, and posed and continues to pose a serious safety risk. Abbott's conduct violates multiple consumer protection and warranty statutes.

4.    Each purchaser of a FreeStyle CGM unwittingly paid for a device with undisclosed and significant safety risks. These purchasers were damaged in that they paid more for their

devices than they would have paid had they known about the safety, reliability, and accuracy issues with FreeStyle CGMs, or in that they would not have purchased their FreeStyle CGMs at all had they been informed of its safety, reliability, and accuracy problems. Additionally, those who paid for other out-of-pocket expenses for the FreeStyle CGM would not have purchased those products if the FreeStyle CGM worked as promised.

5.      Plaintiffs seek damages, restitution, and other remedies on behalf of themselves and the proposed Classes.

## JURISDICTION AND VENUE

6.      This Court has subject-matter jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), because this is a class action in which the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, there are more than 100 Class Members, and at least one class member is a citizen of a state different from Defendants'.

7.      This Court has personal jurisdiction over Defendants. Defendant Abbott Diabetes Care Inc. maintains its principal place of business in Alameda, California, within this District, and Defendants purposefully directed marketing, sales, and post-market activities for the FreeStyle CGMs from and into this District. Plaintiffs' claims arise, in substantial part, from Defendants' conduct originating from and occurring in this District, including decisions regarding labeling, warnings, quality systems, and recalls. Exercising jurisdiction over Defendants does not offend traditional notions of fair play and substantial justice.

8.      Venue is proper in this district under 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to the claims of Plaintiffs and the other Class Members occurred within this District, Defendant Abbott Diabetes Care Inc. resides in this District, and Defendants are subject to the Court's personal jurisdiction here.

COMPLAINT AND DEMAND FOR JURY TRIAL

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## THE PARTIES

**Plaintiffs**

9.      Plaintiff Christopher Taylor is an individual, a citizen of the State of Tennessee, and a resident of Memphis, Tennessee. Plaintiff, a Type 1 diabetic, purchased the FreeStyle Libre 3 Plus on multiple occasions beginning in mid-2024 for their personal and medical use to monitor their blood glucose levels and help manage and control their diabetes.

10.     Prior to purchasing the FreeStyle CGM, Plaintiff reviewed the package insert and other advertising materials, including online advertisements, product videos, and statements on Defendants' website, which represented that the FreeStyle CGM was the most accurate continuous glucose monitor available, required no fingersticks, provided reliable real-time alerts, and offered improved safety and convenience over prior models.

11.     Had those advertisements and any other materials or statements Plaintiff saw or heard not omitted that the FreeStyle CGM was defective, inaccurate, at risk of critical alert failures, and adulterated, as later confirmed by the FDA's recalls and determinations, they would not have purchased the FreeStyle CGM, would not have paid as much for it as they did, and/or would not have been required to purchase additional supplies related to the FreeStyle CGM.

12.     Relying on these omissions, Plaintiff purchased the FreeStyle CGM. At the time Plaintiff purchased their FreeStyle CGM, they paid a price based on the value of such a device free of such a defect. Plaintiff thus suffered economic injury because they paid more for the FreeStyle CGM than they should have paid and/or paid more for necessary supplies related to the FreeStyle CGM than they should have paid.

13.     As a result, Plaintiff experienced dangerously inaccurate glucose readings when compared to actual fingerstick measurements and failed alerts.

COMPLAINT AND DEMAND FOR JURY TRIAL

14.     Plaintiff Krystal Chambers is an individual, a citizen of the State of Mississippi, and a resident of Grenada, Mississippi. Plaintiff, a Type 2 diabetic, purchased the FreeStyle Libre 3 on multiple occasions beginning in August 2024 and the FreeStyle Libre 3 Plus beginning in January 2025 for their personal and medical use to monitor their blood glucose levels and help manage and control their diabetes.

15.     Prior to purchasing the FreeStyle CGM, Plaintiff reviewed the package insert and other advertising materials, including online advertisements, product videos, and statements on Defendants' website, which represented that the FreeStyle CGM was the most accurate continuous glucose monitor available, required no fingersticks, provided reliable real-time alerts, and offered improved safety and convenience over prior models.

16.     Had those advertisements and any other materials or statements Plaintiff saw or heard not omitted that the FreeStyle CGM was defective, inaccurate, at risk of critical alert failures, and adulterated, as later confirmed by the FDA's recalls and determinations, they would not have purchased the FreeStyle CGM, would not have paid as much for it as they did, and/or would not have been required to purchase additional supplies related to the FreeStyle CGM.

17.     Relying on these omissions, Plaintiff purchased the FreeStyle CGM. At the time Plaintiff purchased their FreeStyle CGM, they paid a price based on the value of such a device free of such a defect. Plaintiff thus suffered economic injury because they paid more for the FreeStyle CGM than they should have paid and/or paid more for necessary supplies related to the FreeStyle CGM than they should have paid.

18.     As a result, Plaintiff experienced dangerously inaccurate glucose readings when compared to actual fingerstick measurements and failed alerts.

**Defendants**

19.      Defendant Abbott Laboratories is an Illinois corporation, originally founded in Chicago in 1888 and incorporated in Illinois, with its current global headquarters located at 100 Abbott Park Road, Abbott Park, Illinois.

20.      Defendant Abbott Diabetes Care Inc. is a Delaware corporation with its principal place of business in Alameda, California.

21.      At all relevant times, Defendants engaged in substantial business throughout the United States and within this District.

22.      At all relevant times, Defendants were engaged in the business of designing, manufacturing, developing, preparing, processing, inspecting, testing, packaging, promoting, marketing, distributing, labeling, or selling for profit, either directly or indirectly, through an agent, affiliate, predecessor, or subsidiary, the FreeStyle CGMs.

## FACTUAL ALLEGATIONS

### A.  THE CRITICAL ROLE OF ACCURATE GLUCOSE MONITORING

23.      Diabetes is a chronic disease affecting over 38 million Americans, characterized by the body's inability to properly produce or respond to insulin, resulting in dangerous fluctuations in blood glucose levels.  An additional 97 million have prediabetes.

24.      In order to effectively manage and/or control diabetes, both Type 1 and Type 2 diabetics must closely monitor and manage their blood glucose levels through exercise, diet, and medications, and many must also supply their bodies with appropriate amounts of insulin based on daily routines.

25.      In particular, many diabetics rely on continuous blood glucose monitoring systems ("CGMs") to continuously monitor their blood glucose levels and help manage and/or control

COMPLAINT AND DEMAND FOR JURY TRIAL

diabetes. CGMs represent a critical advancement in diabetes management, providing real-time glucose measurements to help patients avoid dangerous hypoglycemia (low blood sugar) and hyperglycemia (high blood sugar).

26.    Plaintiffs and the other Class Members, like all diabetic patients, rely on accurate glucose readings to make treatment decisions including: (a) insulin dosing calculations; (b) carbohydrate intake determinations; (c) timing of meals and medication; and (d) exercise and activity modifications.

27.    Inaccurate glucose readings can result in severe adverse health consequences including hypoglycemia-induced seizures, loss of consciousness, coma, permanent brain damage, and death, or hyperglycemia-induced diabetic ketoacidosis, organ damage, and death.

**B.    FREESTYLE CGM BACKGROUND**

28.    Defendants engaged in the design, manufacture, marketing, distribution, and sale of continuous glucose monitoring systems, including the FreeStyle Libre 3 Sensor (Model Numbers: 72081-01, 72080-01; UDI-DI: 00357599818005, 00357599819002) and FreeStyle Libre 3 Plus Sensor (Model Numbers: 78768-01, 78769-01; UDI-DI: 00357599844011, 00357599843014).

29.    Plaintiffs and the other Class Members, who are all Type 1 or Type 2 diabetics or guardians/personal representatives thereof, paid out of pocket for the FreeStyle CGM (or related additional items) to help manage their diabetes, or the diabetes of someone to whom they are a guardian/personal representative.

30.    The FDA has determined that the FreeStyle CGMs are defective due to a manufacturing flaw originating from a specific production line. The defect causes the sensors to report falsely low glucose readings, even when users' actual blood glucose levels are normal or elevated. According to the FDA, these inaccurate readings pose a serious safety risk because they

may prompt users to take unnecessary corrective action or delay appropriate treatment, increasing the risk of severe hypoglycemia, loss of consciousness, seizures, or death. The FDA classified the issue as a serious medical device safety concern after Abbott reported hundreds of serious adverse events and multiple deaths potentially associated with the defective sensors, and the agency advised that affected devices be discontinued and replaced.

## C. DEFENDANTS' MARKETING REPRESENTATIONS AND CLAIMS

### 1. Claims of Superior Accuracy

31.    Abbott marketed the FreeStyle CGM as having unsurpassed 14-day accuracy with the world's smallest, thinnest and most accurate 14-day glucose sensor, implicitly warranting consistent, reliable performance. Abbott highlighted the device's size and continuous reading capabilities compared to prior models.

32.    Abbott represented that the FreeStyle CGM achieved a mean absolute relative difference (MARD) of 7.9%, marketing it as the most accurate 14-day continuous glucose monitor (CGM) with readings sent directly to a smartphone every minute and the first CGM to demonstrate a sub-8% MARD.

33.    Abbott prominently advertised that the FreeStyle CGM provides greatest accuracy and that lower MARD percentages indicate better accuracy, expressly representing to consumers that accuracy was a defining feature of the device.

### 2. Representations Regarding Safety and Reliability

34.    Abbott represented that the FreeStyle CGM was intended to replace blood glucose testing for diabetes treatment decisions and was suitable for use by persons age 4 and older (Libre 3 sensor) or age 2 and older (Libre 3 Plus sensor) with diabetes.

COMPLAINT AND DEMAND FOR JURY TRIAL

35.    Abbott marketed the device as enabling users to discreetly check their glucose as often as they like without having to fingerstick and as providing life-changing benefits.

36.    Abbott represented that 95% of patients would have a better understanding of their glucose fluctuations and gain 1hr more in Time in Range per day compared to finger pricking.

37.    Abbott's User's Manual stated the device detects trends and tracks patterns and aids in the detection of episodes of hyperglycemia and hypoglycemia, facilitating both acute and long-term therapy adjustments.

38.    Defendants heavily promoted the "no fingersticks" message for treatment decisions. This representation was misleading and incomplete because (a) affected sensors required confirmatory fingerstick testing when readings did not match symptoms or expectations, and (b) the known prevalence of inaccurate low readings made confirmatory testing necessary for safety in ordinary use.

**3.  Value and Affordability Representations**

39.    Abbott marketed the FreeStyle CGM as being priced the same as previous versions and claimed it was available at a fraction of the cost of competitors, specifically stating it was a third of the cost of other CGMs available.

40.    Abbott represented that most (commercially insured) patients will pay between $0 to $75 per month for FreeStyle CGM sensors, and that covered patients pay about 53 cents per day.

41.    The actual retail price for the FreeStyle CGM without insurance ranges from approximately $224.72 to $235 for a two-sensor (28-day) supply, amounting to over $3,000 per year.

COMPLAINT AND DEMAND FOR JURY TRIAL

42.     Abbott promoted the device as offering access to breakthrough diabetes technologies that should not be out of reach for the people who can benefit most from them.

**4.   Manufacturing Quality and Testing Representations**

43.     Abbott impliedly warranted through its FDA clearance, marketing materials, and User's Manual that the FreeStyle CGM sensors were manufactured according to proper quality control standards and would perform as intended throughout their labeled 14-day or 15-day wear period.

44.     Abbott represented in the User's Manual that users should review all product information before use and could rely on sensor readings to replace blood glucose testing for diabetes treatment decisions after the initial 12-hour warm-up period.

**D.   THE MANUFACTURING DEFECT AND ABBOTT'S KNOWLEDGE**

45.     Beginning in or before 2024, Defendants manufactured millions of FreeStyle CGMs on at least one defective production line that caused affected sensors to provide incorrect low glucose readings during normal use. Internal testing, post-market surveillance, and adverse event reports confirmed systemic deviations from design specifications and labeled performance claims.

46.     The manufacturing defect on the specific production line caused the affected sensors to provide incorrect low glucose readings, representing a failure to manufacture the sensors according to Abbott's design specifications for accurately measuring interstitial fluid glucose levels using electrochemical sensor technology with glucose oxidase enzyme.

47.     The defect caused the affected sensors to falsely indicate hypoglycemia (low blood sugar) when patients' actual glucose levels were normal or elevated. This manufacturing deviation

created a systematic pattern of inaccurate readings in the affected sensors that undermined their intended function of continuous glucose monitoring.

48.    When Plaintiffs and Class members received false low glucose readings, they were misled into believing they needed to consume carbohydrates or avoid insulin administration, resulting in actual hyperglycemia and associated health complications.

**1.    Abbott's Knowledge and Concealment**

49.    Abbott identified the manufacturing defect through its own internal testing and post-market surveillance, which confirmed that sensors manufactured on a specific production line were systematically generating inaccurate low glucose readings that deviated materially from true blood glucose values.

50.    These internal findings demonstrated that the defect was not random or user-related, but rather the result of a manufacturing process failure that directly affected sensor accuracy and reliability—core safety attributes of a continuous glucose monitoring device intended to replace fingerstick testing.

51.    Despite possessing this knowledge, Abbott continued to manufacture, distribute, and sell the defective sensors to consumers, healthcare providers, pharmacies, and third-party distributors throughout the United States and abroad, without issuing a timely warning, recall, or suspension of distribution.

52.    The FreeStyle CGM was primarily marketed on the premise that it replaces traditional fingerstick testing for diabetes management. However, in the November 2025 recall notice, Abbott instructed users to "use a blood glucose meter... when your sensor readings don't match your symptoms or expectations." Abbott's marketing was fundamentally deceptive because the no fingerstick claim was only true when the device functioned perfectly, yet Abbott knew the

sensors did not work, and were prone to systemic manufacturing deviations that made fingerstick verification essential for safety.

53.    Abbott also failed to promptly notify patients already using the affected sensors, even though Abbott knew those patients were relying on the devices to make real-time diabetes treatment decisions, thereby exposing users to an unreasonable risk of severe hypoglycemia, hyperglycemia, injury, or death.

54.    The FDA classified the November 2025 issue as an "Early Alert" for a "potentially high-risk" device problem. Abbott reported 736 serious injuries as of November 14, 2025, but waited until November 24 to issue the public correction.

55.    Abbott prioritized corporate reputation and holiday-season sales over patient safety by withholding the public "Correction" notice for at least 10 days after internal data confirmed the scope of the injuries and deaths, depriving users of the opportunity to switch to safer monitoring methods during that time period.

56.    Abbott did not publicly disclose the defect or initiate a broad corrective action until November 24, 2025, long after the defect had manifested in real-world use and after at least 736 serious injuries and seven deaths had already been reported globally in connection with the defective sensors.

57.    Abbott's delayed disclosure deprived consumers, caregivers, and healthcare providers of material safety information necessary to evaluate whether continued use of the sensors was safe, and prevented timely mitigation of known risks.

2.    **Prior Pattern of Similar Defects and Notice**

58.    The 2025 manufacturing defect was not an isolated or unprecedented failure. Abbott had previously experienced—and was on notice of—accuracy defects affecting the same product line.

59. In July 2024, Abbott recalled sensors for providing incorrect high readings (Class I recall). The November 2025 recall for incorrect low readings involves the same product line. This seesaw of defects—from dangerously high to dangerously low inaccuracies within 18 months—demonstrates a systemic failure in Abbott's Quality Management System (QMS) and a lack of effective Corrective and Preventive Actions (CAPA) required by FDA regulations (21 CFR § 820.100).

60. In July 2024, Abbott initiated a recall and replacement effort for the FreeStyle CGMs after identifying that certain lots of sensors could deliver erroneously high glucose readings, impacting patient treatment decisions and safety.

61. In September 2024, the FDA classified that recall as a Class I recall, the agency's most serious designation, reserved for products that present a reasonable probability of causing serious adverse health consequences or death, including severe hypoglycemia, seizures, coma, permanent neurological injury, and death.

62. That Class I recall placed Abbott on actual notice that its FreeStyle CGMs manufacturing and quality control processes were capable of producing dangerously inaccurate glucose readings, undermining the fundamental safety and efficacy of the system.

63. Despite this prior recall and clear regulatory warning less than one year earlier, Abbott continued to market the FreeStyle CGMs as delivering unsurpassed or industry-leading accuracy, while failing to disclose persistent and systemic manufacturing quality failures that compromised sensor performance.

64. User complaints from December 2025 highlight that readings fluctuate wildly based on body position (e.g., sitting up vs. lying down). While "compression lows" are a known CGM issue, the severity reported with the Libre 3 Plus suggests a potential defect in the sensor's pressure

COMPLAINT AND DEMAND FOR JURY TRIAL

sensitivity that Abbott failed to adequately mitigate or warn against. Beyond the manufacturing line defect, the device suffers from a defect where the sensor is overly sensitive to physical pressure or orientation, leading to "false low" alarms during sleep that cause significant psychological distress and sleep deprivation for patients and caregivers. On information and belief, Abbott knew of these at all relevant times.

65.    Abbott's conduct demonstrates a pattern of delayed disclosure, inadequate corrective action, and concealment of material safety risks, prioritizing continued sales and market share over patient safety and regulatory compliance.

### E.  SCOPE AND SEVERITY OF HARM

#### 1.  Scale of Distribution

66.    Approximately 3 million FreeStyle CGMs sensors manufactured on a specific production line were distributed in the United States and remain potentially in circulation.

67.    Abbott has publicly disclosed that about half of those sensors-approximately 1.5 million-had expired or been used by patients by the time the defect was disclosed in November 2025.

68.    Therefore, an estimated 1.5 million defective sensors were still in inventory, in the supply chain, held by pharmacies or healthcare providers, or in patients' homes or on patients' bodies at the time Abbott and the FDA issued the safety alert.

#### 2.  Reported Adverse Events

69.    As of November 14, 2025, Abbott reported 736 serious injuries associated with the defective sensors.

70.    Of these serious injuries, 57 occurred within the United States.

COMPLAINT AND DEMAND FOR JURY TRIAL

71.     Abbott also acknowledged that seven deaths potentially linked to the defective sensors had occurred globally; none occurred in the United States.

72.     These reported adverse events likely underrepresent the true scale of harm, given well-documented underreporting in voluntary post-market surveillance systems like FDA's MedWatch and delays in identifying causation in chronic care populations; many harms from inaccurate glucose measurements (e.g., metabolic crises or long-term complications) may go unreported or misattributed.

**3.  Nature of Health Risks**

73.     The FDA characterized this issue as a "potentially high-risk" device problem requiring immediate public notification through an Early Alert.

74.     Inaccurate readings can lead to prolonged hyperglycemia (high blood sugar) when patients skip insulin doses based on false low readings. As a result of sustained hyperglycemia caused by false low readings and delayed insulin dosing, Plaintiffs and Class members face increased risks of long-term complications. Plaintiffs seek, where permitted by law, the establishment of a medical monitoring program or fund and/or other appropriate equitable relief to facilitate early detection and mitigation of such risks.

75.     According to Abbott's own disclosures, incorrect low glucose readings over an extended period may lead to wrong treatment decisions for people living with diabetes, such as excessive carbohydrate intake or skipping or delaying insulin doses.

76.     Abbott acknowledged that these decisions may pose serious health risks, including potential injury or death, or other less serious complications.

77.     The specific health risks associated with the defect include, but are not limited to:

- Unrecognized hyperglycemia due to false low readings

- Diabetic ketoacidosis from delayed or skipped insulin doses

- Long-term complications from sustained elevated blood glucose

- Cardiovascular events

- Acute metabolic crises

- Unnecessary emergency medical interventions

- Psychological distress and loss of confidence in diabetes management

**F.  FREESTYLE CGM WARRANTIES**

78.    Abbott expressly warranted in labeling, advertisements, packaging materials, and press releases that the FDA cleared the Freestyle CGMs, that it provides timely and audible alerts for low and high blood glucose, and that it is accurate.

79.    In its Limited Warranty, Abbott expressly warranted that the Freestyle CGMs were free from defects in material and workmanship under normal use for a period of one year from the date of manufacture or the original date of purchase, whichever is later.

80.    Abbott impliedly warranted in labeling, advertisements, packaging materials, and press releases that the Freestyle CGM is safe, not defective, accurate, and of high quality.

81.    Abbott also impliedly warranted in labeling, advertisements, packaging materials, and press releases that the Freestyle CGMs were manufactured and sent to users in accordance with the FDA-cleared specifications and processes, and/or of the same quality as those cleared by the FDA.

82.    Abbott also impliedly warranted that the devices sold were not adulterated within the meaning of 21 U.S.C. § 351(f)(1)(B) and/or misbranded under 21 U.S.C. § 352(o).

83.    The warranty remedy provided by Abbott (replacement) in its recall notice is futile and fails of its essential purpose because Abbott continues to distribute sensors from unreliable

COMPLAINT AND DEMAND FOR JURY TRIAL

production processes, leaving patients without a functional, safe device even after attempting to use the provided remedy.

84.    Abbott's warranty limitations are unconscionable. Abbott's Limited Warranty explicitly states it "covers only the Reader" and "does not cover the sensor." Any attempt to disclaim warranties on the sensor itself is unconscionable and unenforceable because the sensor is the life-sustaining component of the system. A consumer cannot use the Reader without a functional sensor; therefore, the sensor and reader are an inseparable medical system for the purposes of merchantability.

**G. FRAUDULENT OMISSION ALLEGATIONS**

85.    Absent discovery, Plaintiffs are unaware of, and unable through reasonable investigation to obtain, the true names and identities of those individuals at Abbott responsible for failing to rectify the defects mentioned above and disseminating false and misleading marketing materials regarding the Freestyle CGMs. Plaintiffs' claims arise out of Abbott's fraudulent concealment of these defects, and its representations about the efficacy, accuracy, and quality of those monitors.

86.    Plaintiffs allege that Abbott knew, or was reckless in not knowing, about the defects at all relevant times, specifically at the time Plaintiffs and the other members of the proposed Classes acquired their Freestyle CGMs or related accessories—such as overpatches, adhesives, additional test strips, insulin pumps, and/or Freestyle-compliant cell phones—required for the Freestyle CGMs themselves or necessary because of the Freestyle CGMs' defects. Abbott was under a duty to disclose these defects based on its exclusive knowledge of them and its concealment of them.

87.    Plaintiffs make the following specific fraud allegations with as much specificity as possible absent access to the information necessarily available only to Abbott:

- **Who:** Abbott actively concealed the defects from consumers, as alleged above. Plaintiffs are unaware of, and therefore unable to identify, the true names and identities of specific individuals at Abbott responsible for such decisions.

- **What**: Abbott knew, or was reckless or negligent in not knowing, that the Freestyle CGMs contained the defects. Abbott concealed these defects and made representations about the efficacy, quality, and accuracy of these monitors.

- **When**: Abbott concealed material information regarding the defects at all times, and it made representations about the efficacy, quality, and accuracy of the Freestyle CGMs starting at a time currently unknown to Plaintiffs and continuing through the time of sale, on an ongoing basis, to this day, as alleged above. Abbott has still not disclosed the truth about the full scope of these defects to anyone outside of the company. It has taken insufficient actions to inform consumers about the true nature of these defects in the Freestyle CGMs.

- **Where**: Abbott concealed material information regarding the true nature of the defects in every communication it had with Plaintiffs and the other Class members about the Freestyle CGM, and, particularly, its efficacy, quality, and accuracy. Plaintiffs are not aware of any documents, communications, or other items in which Abbott has disclosed the truth about the full scope of the defects in the Freestyle CGMs to anyone outside of Abbott. Such information is not adequately disclosed in any sales documents, displays, advertisements, warranties, manuals, or on Abbott's website.

- **How**: Abbott concealed the defects from Plaintiffs and the other Class members by making inaccurate representations about the efficacy, quality, and accuracy of the Freestyle CGMs. Abbott actively concealed the truth about the existence, scope, and nature of the defects from Plaintiffs and the other Class members at all times, even though it knew about the defects and knew that information about the defects would be important to a reasonable consumer. Abbott promised in its marketing materials that the Freestyle CGMs had qualities that they do not have.

- **Why**: Abbott actively concealed material information about these defects in the Freestyle CGM for the purpose of inducing Plaintiffs and the other Class members to acquire the Freestyle CGM or related accessories, rather than using competitors' glucose monitors. Had Abbott disclosed the truth, for example in its advertisements or other materials or communications, Plaintiffs and the other Class members (and any reasonable consumer) would have been aware of them, and they would not have acquired the Freestyle CGM or additional accessories for them, or they would have paid less for them.

88.     Defendants had a duty to disclose material facts because: (1) they possessed exclusive knowledge of the defects not known to consumers; (2) they actively concealed the defects while making partial representations (e.g., "no fingersticks," accuracy, reliability, and safety claims) that were misleading absent disclosure; and (3) the defects go to safety—a central characteristic of a medical device—creating a duty to disclose.

## TOLLING OF THE STATUTE OF LIMITATIONS

### A.  DISCOVERY RULE TOLLING

COMPLAINT AND DEMAND FOR JURY TRIAL

89.     Plaintiffs and the other Class members could not have discovered through the exercise of reasonable diligence that their Freestyle CGMs were defective within the time period of any applicable statutes of limitation.

90.     Neither Plaintiffs nor the Class members knew or could have known of the defects of the Freestyle CGM, at least until after the FDA Class 1 recall was publicly issued.

**B.  FRAUDULENT CONCEALMENT TOLLING**

91.     Throughout the time period relevant to this action, Abbott concealed from and failed to disclose to Plaintiffs and the other Class members vital information about the character, quality, nature, and risks of the Freestyle CGM.

92.     Indeed, Abbott kept Plaintiffs and the other Class members ignorant of vital information essential to the pursuit of their claims. As a result, neither Plaintiffs nor the other Class members could have discovered the defects, even upon reasonable exercise of diligence.

93.     Despite its knowledge of defects, Abbott failed to disclose and concealed, and continue to conceal, this critical information from Plaintiffs and the other Class members, even though, at any point in time, it could have done so through individual correspondence, media release, or by other means.

94.     Abbott affirmatively and actively concealed the defects by continuing to market the Freestyle CGMs despite knowing they were defective.

95.     Plaintiffs and the other Class members justifiably relied on Abbott to disclose the defects in the Freestyle CGMs that they purchased, because those defects were hidden and not discoverable through reasonable efforts by Plaintiffs and the other Class members.

96.     Thus, the running of all applicable statutes of limitation have been suspended with respect to any claims that Plaintiffs and the other Class members have sustained as a result of the defect, by virtue of the fraudulent concealment doctrine.

### C.  ESTOPPEL

97.     Abbott was under a continuous duty to disclose to Plaintiffs and the other members of the Class the true character, quality, nature, and risks of the Freestyle CGM.

98.     Abbott knowingly concealed the true character, quality, nature, and risks of the Freestyle CGM.

99.     Based on the foregoing, Abbott is estopped from relying on any statutes of limitations in defense of this action.

### INJURIES AND DAMAGES

100.    Plaintiffs and the other Class members reasonably relied on Abbott's failure to disclose the Freestyle CGM's defects. Had Abbott disclosed the truth, Plaintiffs and the other Class Members would not have purchased, or would have paid less for, the Freestyle CGM and/or related additional items. They suffered economic injury, including price-premium damages, out-of-pocket costs for replacements, loss of the benefit of the bargain, and time/money spent addressing inaccurate readings.

101.    Abbott's omissions were a substantial factor in causing Plaintiffs' and the other Class members' injuries.

### CLASS ACTION ALLEGATIONS

102.    This action has been brought and may be properly maintained on behalf of the Classes proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

COMPLAINT AND DEMAND FOR JURY TRIAL

103.    Pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3), Plaintiffs bring this action on behalf of themselves and all others similarly situated (referred to throughout this Complaint as "Class members") as representative of the following Classes:

- **Nationwide Class**: All natural persons who purchased the Freestyle CGM, or any component thereof or accessory therefor, in the United States.

- **State Subclasses**: All natural persons who purchased the Freestyle CGM, or any component thereof or accessory therefor, in the States of Tennessee and Mississippi.

104.    The Classes exclude Abbott's officers, directors, and employees; any entity in which one or more of the Abbott has a controlling interest; and the affiliates, legal representatives, attorneys, successors, heirs, and assigns of each of the Abbott. The Classes also exclude members of the judiciary to whom this case is assigned, their families, and members of their staff.

105.    The members of the Classes are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. Plaintiffs are informed and believe that there are hundreds of thousands of Class members, as well as tens of thousands of members of the Classes from each state. While the precise number of Class members is unknown to Plaintiffs, it may be ascertained from Abbott's records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

106.    The members of the Classes are readily ascertainable from the business records of Abbott.

107.   There are questions of law and fact common to Plaintiffs and the other Class members, which predominate over any questions affecting only individual Class members. These common questions of law and fact include, without limitation:

- whether Abbott designed, advertised, marketed, distributed, sold, or otherwise placed the Freestyle CGM into the stream of commerce in the United States;

- whether Abbott engaged in the conduct alleged herein;

- whether Abbott's alleged conduct violates applicable law;

- whether Abbott misled Class members regarding the quality, benefits, and/or risks of the Freestyle CGM;

- whether Abbott had actual or imputed knowledge of the alleged defects and failed to disclose such defects and/or their risks to Plaintiffs and the other Class members;

- whether Abbott's acts, inactions, and practices complained of herein violated the state consumer protection statutes alleged herein;

- whether Abbott's acts, inactions, and practices complained of herein breached the Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1790, *et seq.*

- whether Abbott's acts, inactions, and practices complained of herein breached express warranties;

- whether Abbott's acts, inactions, and practices complained of herein breached the implied warranty of merchantability;

- whether Abbott's acts, inactions, and practices complained of herein constituted fraudulent omission;

23

COMPLAINT AND DEMAND FOR JURY TRIAL

- whether Abbott's acts, inactions, and practices complained of herein constituted unjust enrichment;

- whether Plaintiffs and the other Class members overpaid for their Freestyle CGM as a result of the defects alleged herein;

- whether the Class members are entitled to damages, restitution, equitable relief, statutory damages, civil penalties, punitive damages, exemplary damages, and/or other relief; and

- the amount and nature of relief to be awarded to Plaintiffs and the other Class members.

108.   Plaintiffs' claims are typical of those of the Class members because all were exposed to the same omissions regarding the Freestyle CGM. Plaintiffs and the other Class members all suffered similar harm as a result of Abbott's uniform conduct. Neither Plaintiffs nor the other Class members would have purchased the Freestyle CGM, or would have paid less for it, had they known of the defects and risks in the Freestyle CGM, as well as its lack of benefits.

109.   Plaintiffs and the other Class members suffered damages as a direct and proximate result of the same wrongful practices in which Abbott engaged. Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the other Class members.

110.   Plaintiffs can and will fairly and adequately represent and protect the interests of Class members, including those from states and jurisdictions where they do not reside. Plaintiffs have no interests that conflict with the interests of the Classes. In addition, Plaintiffs have retained counsel competent and experienced in complex litigation and class actions, and Plaintiffs intend to prosecute this action vigorously. The Classes' interests will be fairly and adequately protected by Plaintiffs and their counsel.

111.    A class action is superior to any other available method for the fair and efficient adjudication of this controversy. The damages suffered by individual Class members are relatively small compared to the burden and expense of individual litigation, making individual suits impracticable.

112.    Class treatment of common issues avoids inconsistent or contradictory judgments, reduces delay and expense for all parties and the courts, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by one tribunal. No unusual difficulties are likely to arise in managing this case as a class action.

113.    Proceeding on a class-wide basis will conserve judicial resources and ensure that the rights of all Class members are fairly and efficiently protected. The common issues arising from Abbott's conduct affecting Class members, as described *supra*, predominate over any individualized issues. Adjudication of the common issues in a single action has important and desirable advantages of judicial economy.

## **CAUSES OF ACTION**

114.    Plaintiffs bring these causes of action on behalf of the Classes, as defined herein.

115.    With respect to common law claims, the application of California law is appropriate because, upon information and belief, a significant number of corporate decisions regarding the Freestyle CGMs that give rise to this action occurred in California, Abbott Diabetes Care Inc. has its principal place of business in California, and it is in the interest of California public policy to apply California law.

**COUNT I**
**FRAUDULENT OMISSION**
**On Behalf of Plaintiffs and the Nationwide Class**

116.    Plaintiffs repeat and reallege all factual averments as if fully set forth herein.

117.    Plaintiffs bring this claim individually and on behalf of the other members of the Nationwide Class (the "Class," for purposes of this Count).

118.    Abbott was aware of the Freestyle CGM's defects mentioned above, when it manufactured, marketed, and sold the devices to Plaintiffs and the other Class members.

119.    Having been aware of the Freestyle CGM's defects and, having known that Plaintiffs and the other Class members could not have reasonably been expected to know about them, Abbott had a duty to disclose the defects to Plaintiffs and the other Class members in connection with the sale of the Freestyle CGMs, as these defects relate to important safety issues respecting the devices, which are used for managing diabetes, a disease that can be life-threatening.

120.    Defendants had a duty to disclose material facts because: (1) they possessed exclusive knowledge of the defects not known to consumers; (2) they actively concealed the defects while making partial representations (e.g., "no fingersticks," accuracy, reliability, and safety claims) that were misleading absent disclosure; and (3) the defects go to safety—a central characteristic of a medical device—creating a duty to disclose.

121.    Abbott did not disclose the defects to Plaintiffs and the other Class members in connection with the sale of the Freestyle CGMs and/or subsequent sales of Freestyle CGM.

122.    Abbott knew that these omissions would cause the false impression that the Freestyle CGM did not have the aforementioned defects.

123.    The defects concern material information with respect to the sale of the Freestyle CGMs, their sensors, and sale of related products. Abbott's omissions concern the defects mentioned above that can result in malfunctions including (but not limited to) inaccuracies in glucose readings.

124.    The existence of these defects are material facts that a reasonable person would have considered in deciding whether or not to choose, purchase (or to pay the same price for) the Freestyle

COMPLAINT AND DEMAND FOR JURY TRIAL

CGMs and/or additional items for the Freestyle CGM. In purchasing the Freestyle CGMs and related products, Plaintiffs and the other Class members, who planned to use the Freestyle CGM to help manage diabetes for diabetes management, reasonably and justifiably relied on Abbott to disclose known material defects with respect to the Freestyle CGMs. Only Abbott had the relevant information about these defects, and Plaintiffs and the other Class members would not have known of these defects otherwise.

125.    Had Plaintiffs and the other Class members known of the defects, they would not have purchased the Freestyle CGMs, would have paid less for the devices, or would not have purchased additional items required for the Freestyle CGM itself or necessary because of the Freestyle CGM's defects.

126.    Through their omissions regarding the defects, Abbott intended to induce, and did induce, Plaintiffs and the other Class members to purchase Freestyle CGMs, they otherwise would not have purchased, or to pay more for Freestyle CGMs and related products than they otherwise would have paid.

127.    As a direct and proximate result of Abbott's omissions, Plaintiffs and the other Class members either overpaid for the Freestyle CGMs and sensors or would not have purchased the Freestyle CGMs, sensors, and/or additional required items at all if the defects had been disclosed. Therefore, Plaintiffs and the other Class members have incurred damages—including but not limited to actual damages, compensatory damages, restitution, equitable relief, statutory damages and penalties, and punitive and exemplary damages—in an amount to be determined at trial.

**COUNT II**
**UNJUST ENRICHMENT**
**On Behalf of Plaintiffs and the Nationwide Class**

128.    Plaintiffs repeat and reallege all factual averments as if fully set forth herein.

129.    Plaintiffs bring this claim individually and on behalf of the other members of the Nationwide Class (the "Class," for purposes of this Count).

130.    Abbott has benefited from selling at an unjust profit defective Freestyle CGMs that had artificially inflated prices due to Abbott's concealment of defects, and Plaintiffs and the other Class members have overpaid for these devices.

131.    Abbott has received and retained unjust benefits from Plaintiffs and the other Class members, and inequity has resulted.

132.    It is inequitable and unconscionable for Abbott to retain these benefits.

133.    Because Abbott concealed its fraud and deception, Plaintiffs and the other Class members were not aware of the true facts concerning the Freestyle CGMs and did not benefit from Abbott's misconduct.

134.    Abbott knowingly accepted the unjust benefits of its misconduct.

135.    As a result of Abbott's misconduct, the amount of its restitution should be disgorged and returned to Plaintiffs and the other Class members in an amount to be determined at trial.

**COUNT III**
**BREACH OF UNFAIR COMPETITION LAW**
**Cal. Bus. & Prof. Code §§ 17200 *et seq*.**
**On Behalf of Plaintiffs and the Nationwide Class**

136.    Plaintiffs repeat and reallege all factual averments as if fully set forth herein.

137.    Plaintiffs bring this claim individually and on behalf of the other members of the Nationwide Class (the "Class" for purposes of this Count).

138.    California Business and Professions Code § 17200 prohibits any "unlawful, unfair, or fraudulent business acts or practices."

COMPLAINT AND DEMAND FOR JURY TRIAL

139.    Abbott has engaged in unlawful, unfair or fraudulent business act or practice by knowingly selling defective Freestyle CGMs and omitting disclosure of material information, including the Freestyle CGMs' defects and risks.

140.    Pursuant to such actions, Abbott has benefited from selling the Freestyle CGMs.

141.    Abbott has received and retained the benefits from Plaintiffs and the other Class members, and inequity has resulted, justifying restitutionary disgorgement under California Business and Professions Code § 17200 et seq.

142.    It is inequitable and unconscionable for Abbott to retain these benefits.

143.    Because Abbott concealed its fraud and deception, Plaintiffs and the other Class members were not aware of the true facts concerning the Freestyle CGMs and did not benefit from Abbott's misconduct.

144.    Abbott knowingly accepted the unjust benefits of its misconduct.

145.    As a result of Abbott's misconduct, the amount of its restitution should be disgorged and returned to Plaintiffs and the other Class members in an amount to be determined at trial.

**B. Claims Brought on Behalf of Statewide Classes**

**COUNT IV**
**VIOLATION OF THE MISSISSIPPI CONSUMER PROTECTION ACT**
**Miss. Code Ann. §§ 75-24-1, *et seq.***
**On Behalf of Plaintiffs and the Mississippi Class**

146.    Plaintiffs repeat and reallege all factual averments as if fully set forth herein.

147.    Plaintiffs bring this claim individually and on behalf of the other members of the Mississippi Class.

148.    The Mississippi Consumer Protection Act ("MCPA") prohibits unfair methods of competition and unfair or deceptive trade practices in any trade or commerce. Miss. Code Ann. § 75-24-5(1).

29
COMPLAINT AND DEMAND FOR JURY TRIAL

149.    Abbott engaged in unfair and deceptive trade practices by representing that the Freestyle CGMs were of a particular standard, quality, or grade when they were of another, in violation of the MCPA.

150.    As a direct and proximate result of Abbott's conduct, Plaintiffs and the Mississippi Class suffered a loss of money or property.

151.    Plaintiffs and the Mississippi Class are entitled to recover actual damages and reasonable attorneys' fees under Miss. Code Ann. § 75-24-15.

**COUNT V**
**VIOLATION OF THE TENNESSEE CONSUMER PROTECTION ACT**
**Tenn. Code Ann. §§ 47-18-101, *et seq.***
**On Behalf of Plaintiffs and the Tennessee Class**

152.    Plaintiffs repeat and reallege all factual averments as if fully set forth herein.

153.    Plaintiffs bring this claim individually and on behalf of the other members of the Tennessee Class.

154.    The Tennessee Consumer Protection Act ("TCPA") prohibits "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce." Tenn. Code Ann. § 47-18-104(a).

155.    Abbott engaged in unfair and deceptive acts and practices in connection with the sale of its Freestyle CGMs, including by representing that the products had characteristics and benefits they did not have, in violation of the TCPA.

156.    As a direct and proximate result of Abbott's unfair and deceptive practices, Plaintiffs and the Tennessee Class have suffered an ascertainable loss of money.

157.    Plaintiffs and the Tennessee Class are entitled to recover actual damages, treble damages, and reasonable attorneys' fees and costs under Tenn. Code Ann. § 47-18-109.

COMPLAINT AND DEMAND FOR JURY TRIAL

1

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all Class members, respectfully request that the Court enter judgment in their favor and against all Defendants, individually, jointly, and severally on the entire Complaint, as follows:

    A.  For an Order certifying this action as a class action, designating Plaintiffs as Class Representatives, and appointing Plaintiffs' Counsel to represent the Classes;

    B.  For an award of actual damages, compensatory damages, restitution, equitable relief, statutory damages, and statutory penalties, in an amount to be determined at trial and as allowable by law;

    C.  For an award of punitive and exemplary damages, as allowable by law;

    D.  For an award of attorneys' fees and costs, and any other expense, including reasonable expert witness fees;

    E.  Pre- and post-judgment interest on any amounts awarded; and

    F.  Such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs and the other Class members hereby demand a jury trial for all claims so triable.

Dated: January 1, 2026            Respectfully Submitted,

                                */s/ Mazin A. Sbaiti*
                                Mazin A. Sbaiti* (CA Bar No.: 275089)
                                **SBAITI & COMPANY PLLC**
                                3102 Maple Avenue,
                                Suite 400
                                Dallas, Texas 75201
                                T: (214) 214-3400
                                F: (214) 853-4367
                                mas@sbaitilaw.com

COMPLAINT AND DEMAND FOR JURY TRIAL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Christopher L. Ayers*(NJ Bar No.: 008942011)
Asim M. Badaruzzaman* (NJ Bar No.: 040462009)
Matthew B. Sicheri* (NJ Bar No.: 256102018)
**SBAITI & COMPANY NJ LLC**
100 Mulberry Street
3 Gateway Center, Suite 1102
Newark, NJ 07102
T: (973) 954-2000
F: (973) 954-9710
Chris.ayers@sbaitilaw.com
asim.badaruzzaman@sbaitilaw.com
matthew.sicheri@sbaitilaw.com

*pro hac vice* application forthcoming

***Attorneys for Plaintiffs***

COMPLAINT AND DEMAND FOR JURY TRIAL