UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

**In re FreeStyle CGM Consumer Litigation**

CASE NO. 4:26-CV-00003-HSG

**STIPULATED PROTOCOL RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION**

Honorable Haywood S. Gilliam, Jr.

## I. SCOPE

### A. Purpose.

This Stipulated Protocol for Producing Documents and Electronically Stored Information (the "Protocol") will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure; this Court's Guidelines for the Discovery of Electronically Stored Information ("ESI Guidelines"); the Northern District of California's Checklist for Rule 26(f) Meet and Confer Regarding ESI ("ESI Checklist"); and any other applicable orders and rules.

### B. General.

The procedures and protocols outlined herein govern the production of documents and ESI by all Parties. The Parties will take reasonable steps to comply with this agreed-upon Protocol. All Productions made pursuant to this Protocol are subject to any confidentiality order, protective orders, or privilege orders entered in these Proceedings. Nothing in this Protocol is intended to be an exhaustive list of discovery obligations or rights of a Party requested to produce Documents or ESI ("Producing Party") or a Party requesting Documents or ESI ("Requesting Party").

### C. Applicability.

The production specifications in this Protocol apply to Documents that are produced in the first instance in this Action. To the extent any Party is required to or agrees to produce Documents in this Action that originally were produced in other cases or government investigations, such Documents may be produced in the same format in which they originally were produced in the other cases or to the

government. Documents originally produced in other cases shall be produced in this action bearing the original Bates numbers assigned to them in the other matter, along with any additional Bates stamp required under this Order. If, in response to a request seeking Documents that were originally produced in another matter or proceeding, the Producing Party withholds a portion of the prior production, the Producing Party will state in writing the basis for any withholding.

The terms and specifications of this Protocol shall only apply to productions made after the date of entry of this Protocol. Productions in this Action that were delivered before the date of entry of this Protocol are exempt from the terms of the Protocol, unless the Producing Party and Requesting Party otherwise agree. To the extent additional obligations or rights not addressed in this Protocol arise under the Federal Rules of Civil Procedure, local rules, or applicable state and federal statutes, they shall be controlling.

**D. Cooperation.**

The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's ESI Guidelines.

**E. Limitations and Non-Waiver.**

The Parties and their attorneys intend by this Protocol to make the mutual disclosures promised herein. The Parties and their attorneys do not intend by this Protocol to waive their rights to any protection or privilege, including the attorney-client privilege and the work-product doctrine. All Parties preserve their attorney-client privileges, work product protection, and other privileges. The Parties and their attorneys are not waiving, and specifically reserve, the right to object to any discovery request on any grounds. Further, nothing in this Protocol shall be construed to affect the admissibility of Documents and ESI. All objections to the discoverability or admissibility of any Documents and ESI are preserved and may be asserted at any time.

**F. Reservation of Rights.**

The Parties will continue to meet and confer regarding any issues as necessary and appropriate. This Order does not address or resolve any objections to the scope of the Parties' respective discovery requests. The Parties retain the right, upon reviewing any productions made by another Party in this action

or conducting other investigation and discovery, to request that documents or ESI from additional non-custodial data sources and custodians be produced.

For the avoidance of doubt, the inclusion of any platform, program, application, or software in this Protocol as an example does not itself establish that ESI from such source is relevant or proportional, and the Parties reserve all rights to object to any demand to collect or produce ESI from such sources. Nothing in this Section limits, reduces, or excuses any preservation, collection, search, or production obligation that otherwise exists under the Federal Rules of Civil Procedure, this Court's ESI Guidelines and Checklist, or any order of this Court.

**G. Modification by Agreement.**

Any practice or procedure set forth herein may be varied by agreement of affected Parties, which will be confirmed in writing, where such variance is deemed appropriate to facilitate the timely and economical exchange of Documents and ESI. Any Party added or joined to any complaint in this Action and any Party to actions that may be consolidated into or coordinated with the above-captioned matter after the date of this Protocol that seeks to deviate from the Protocol set forth herein must obtain leave of Court to do so unless all affected Parties otherwise consent in writing. Before seeking Court intervention, Plaintiffs and all affected Defendants shall meet and confer in good faith regarding any modification.

**H. Modification by Court Order.**

Nothing in this Protocol waives the right of any Party to petition the Court for an order modifying its terms upon good cause shown, provided, however, that counsel for such party must first meet and confer with the counsel for the opposing party and the Parties shall use reasonable best efforts to negotiate an exception from or modification to this Protocol prior to seeking relief from the Court.

## II. IDENTIFICATION OF RESPONSIVE DOCUMENTS

**A. Preservation.**

Consistent with their obligations under Rule 26 and the Court's ESI Guidelines and Checklist, the Parties acknowledge that they are taking reasonable and proportional steps to preserve potentially relevant and discoverable materials under applicable laws. The Parties will engage in meet and confer discussions about their preservation obligations and exchange information about those persons or entities likely to possess potentially responsive information and those custodial and non-custodial sources that are likely to

contain potentially responsive information. Except as expressly stated herein, or agreed in writing by the parties, nothing in this Protocol excuses any Party from its obligation to preserve potentially relevant data.

**B. Non-Discoverable ESI.**

Consistent with the proportionality standard of Rule 26(b)(1), the following categories of ESI are presumed to be not reasonably accessible and not discoverable, and need not be preserved or searched, absent a Requesting Party's written notice identifying the category sought and the basis for the request:

(i) Deleted, slack space, fragmented, unallocated, or other data only accessible by forensics;

(ii) Data in metadata fields that are frequently updated automatically, such as last-opened dates;

(iii) Temporary data stored in a computer's random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system;

(iv) Online access data such as temporary Internet files, history, cache, and cookies; and

(v) Server, system, or network logs generated automatically for routine operational, performance-monitoring, or diagnostic purposes;

Nothing herein is to suggest that any sources of information or data not specifically excluded here are otherwise discoverable or required to be searched. Likewise, nothing herein limits or waives any Requesting Party's right to seek discovery of any category of ESI identified in this Section or of any source not identified herein.

**C. Identification of ESI**

The Parties shall meet and confer and exchange information regarding the identification of sources of potentially relevant ESI, including:

a. Individuals likely to possess potentially relevant information. The individuals shall be identified by name and job title(s)/roles;

b. The location(s) and description(s) of custodial data sources (e.g., any data source used for business purposes) likely to contain potentially relevant information;

c. The location(s) and description(s) of Non-custodial data sources, including any non-custodial data sources hosted by third parties, identified as likely to contain

potentially relevant information; and

d. Known third-parties likely to possess potentially relevant information.

Following this exchange, the Parties agree to meet and confer in a good faith effort to agree upon (a) custodians from whom information will be collected, (b) data sources, including custodial and non-custodial information, which will be collected for review and production, (c) the identity and scope of sources of documents and ESI to be produced without the use of technology-assisted review or search terms, and (d) applicable timeframe for collection and review of documents.

Nothing contained in this Protocol is intended to or shall serve to limit a Party's right to conduct a review of Documents for responsiveness, privilege, and/or confidentiality before production.

## III. SEARCH & REVIEW

### A. Search Methodology.

The Parties shall meet and confer in good faith to come to an agreement on search methods used to identify responsive Documents and ESI. To the extent the Parties are unable to reach agreement on the application of, or procedures for, any search or filtering processes, the Parties shall raise such issues for resolution by the Court or its designee.

Nothing in this section shall limit a Party's right to reasonably seek agreement from the other Parties or a Court ruling to modify previously agreed-upon search terms or other search parameters at any time prior to the completion of discovery. The Parties will not seek Court intervention without first attempting to resolve any disagreements in good faith, based upon all reasonably available information.

The fact that a Document or ESI contains search term hits or is identified as responsive by any other technology used to identify potentially responsive Documents and ESI shall not prevent any Party from withholding such file from production on the grounds that it is protected from disclosure by applicable privilege or work-product protection.

### B. Inaccessible Documents.

The Parties agree that if the Producing Party determines a source or document is not "reasonably accessible" pursuant to Federal Rule of Civil Procedure 26(b), it will meet and confer in good faith with Receiving Party regarding the accessibility of the source and whether such documents can be collected and produced.

**C. Known Responsive Documents and ESI.**

Documents or ESI that are known to be responsive to a discovery request in this case shall be produced regardless of whether they are responsive to any search methodology described herein or developed in accordance with this Order. Nothing about such review shall prevent the producing parties from redacting or withholding and logging such documents or ESI for applicable privileges

**D. Discrete Document Collections / Custodian-Identified Files.**

Discrete folders or collections of information responsive to a discovery request, such as relevant folders of ESI that are identified or segregated by a custodian (i.e., custodian-created desktop or email folders/sub-folders or shared storage repositories specifically labeled or otherwise identified), shall be collected, reviewed, and produced (if determined to be responsive) without the use of keyword limiters or technology assisted review limiters.

**E. Search Terms.**

Where the Parties agree that potentially responsive ESI shall be searched through the use of search terms, the Parties shall meet and confer in good faith to agree upon search terms and methodologies used to apply them that are reasonably calculated to identify responsive Documents and ESI.

*1. Search Term Process.*

A Party who proposes to use search terms will describe a Search Protocol that will include: (a) the platform to be used for application of the search terms, (b) the criteria to be used to identify the universe of Documents to which search terms will be applied (e.g., date range, custodians and data sources, etc.), (c) whether any culling or filtering will have been done to that universe of Documents prior to the application of search terms, (d) proposed search terms to be applied to that universe of Documents. During the meet and confer process, the Producing Party will disclose any known relevant company terminology (or equivalent) and all relevant project and code names, code words, acronyms, abbreviations, and nicknames, if any. A Requesting Party may also suggest additional or modified search terms to be applied. The Producing Party will consider these requests in good faith.

If the Parties cannot resolve their disagreements regarding search terms and search methodologies, the party seeking to alter the search protocol may bring the dispute to the Court for resolution.

*2. Hit Reports.*

The Parties will meet and confer in good faith about methods to search ESI. If there is a dispute regarding a search term, the Requesting Party may request that the Producing Party provide hit reports for the de-duplicated document collection where the terms were applied, including the following with respect to each term in the de-duplicated collection:

a. The number of documents with hits for that term;

b. The number of documents with hits for that term, plus family members; and

c. The number of unique documents, i.e., documents which do not have hits for any other term, for that term.

The Parties will meet and confer in good faith to resolve disagreements over the search terms.

**F. Use of Technology-Assisted-Review.**

If a Party plans to use technology-assisted review ("TAR"), also known as "artificial intelligence" or "predictive coding," to identify or cull documents to be reviewed or produced, the Producing Party will notify the receiving Party in advance to discuss an appropriate TAR Protocol for that type of review. If the Parties cannot resolve their disagreements regarding TAR methodologies, they shall promptly bring the dispute to the Court for resolution.

**G. Unsearchable Documents**

If a Producing Party identifies documents which are reasonably believed to be responsive to discovery requests and for which text-based search technologies are fundamentally ineffective, such as standalone images, must be reviewed without culling by search terms, predictive coding, or other technologies that rely primarily on text. Prior to the production of such unsearchable items, the Producing Party may conduct a page-by-page review for responsiveness, confidentiality, privilege, and other protections, as defined by and subject to the terms of any Protective Order entered in this litigation.

**H. Effectiveness of Defendants' Search Methodology and Results**

The review process should incorporate quality-control and validation procedures to ensure the search methodology is effective, consistent with the requirements of Federal Rule of Civil Procedure 26 (g). Defendants will ensure that an appropriate level of search term recall (the percentage of responsive Documents in the collection which were identified as responsive by Defendants' search methodology) has been achieved and responsive ESI was not inadvertently omitted. The Parties will meet and confer

regarding the potential exchange of information about the Producing Party's validation process and shall promptly bring their disputes to the Court if the Parties cannot resolve their disagreements.

## IV. FORM OF PRODUCTION

### A. Standard Format.

Except as otherwise specified, documents and ESI will be produced in single-page, black and white or color, TIFF Group IV, 300 DPI TIFF images with a .opt image cross-reference file and a text-delimited .dat load file. Hidden content, tracked changes, edits, comments, notes, and other similar information viewable within the native file shall also be imaged so that this information is captured in the produced image file. TIFFs should show any and all text and images which would be visible to the reader using the native software that created the document. For example, TIFFs of e-mail messages should include the BCC line. If particular documents warrant a different format, the Parties will cooperate to arrange for the mutually acceptable production of such documents. The Parties agree not to degrade the searchability of documents as part of the document production process.

The producing party shall make reasonable efforts to comply with good-faith requests made by the requesting party to provide replacement color images for documents originally produced in black and white. Documents produced as TIFF/JPG images shall be named according to the Bates number of the corresponding TIFF/JPG image. Each *.tiff/*.jpg file should be assigned a unique name matching the Bates number of the corresponding image. Bates numbers and confidentiality designations should be electronically branded on each produced *.tiff/*.jpg image. These *.tiff/*jpg images should be provided in a separate folder and the number of TIFF/JPG files per folder should be limited to 1,000 files.

### B. File Types and Formats.

Emails, PDFs, and word processing files (e.g., Microsoft Word) shall be produced as TIFFs. All spreadsheet files (e.g., Microsoft Excel, Corel Quattro, etc.) shall be produced as native files with TIFF placeholder images. All word processing files (e.g., Microsoft Word) containing track changes, comments, hidden text, or embedded file types shall be produced in color as JPGs. Microsoft PowerPoint and image files (e.g., .jpg, .gif); shall be produced as native files with TIFF placeholder images where reasonably possible, unless redactions are required, in which case such files shall be produced as TIFFs. All media files, such as audio and video files, shall be produced as native files with TIFF placeholder images. The

parties will meet and confer on the production format of other file types, such as CAD drawings, GIS data, materials and prototypes testing, etc., and for enterprise and third-party-hosted communication platforms or systems.

**C. Native Files.**

Any file produced in native file format shall be given a file name consisting of a unique Bates number; for example, "ABC00000002." For each native file produced, the production will include a *.tiff image slipsheet indicating the production number of the native file and the confidentiality designation and stating: "File Provided Natively" or substantially similar words. To the extent that it is available, the original document text shall be provided in a document-level multi-page UTF-8 text file with a text path provided in the *.dat file; otherwise, the text contained on the slipsheet language shall be provided in the *.txt file with the text path provided in the *.dat file. Native files will be produced in a separate folder on the production media. In advance of depositions, the parties reserve the right to produce TIFF versions, as applicable, of any previously produced native file at their discretion.

**D. Document Unitization.**

If a document is more than one page, to the extent practicable, the unitization of the document and any attachments or affixed notes shall be maintained as it existed when collected by the producing party. If responsive documents are maintained in a physical file, folder, envelope, binder, notebook, or similar container used to store documents, all contents therein shall be reviewed for responsiveness and privilege. If unitization cannot be maintained, the original unitization shall be documented in a load file or otherwise electronically tracked to the extent practicable. Document pages which have affixed notes, such as Post-it notes, shall be imaged with and without the note attached, if available.

**E. Color.**

The following documents will be produced in color: (1) Word Documents and PDF files; (2).ppt files; and (3) scanned or hand-written Documents.

All other Documents containing color need not be produced in color. Notwithstanding this provision, the Producing Party will honor reasonable requests for a color image of a document, if the original document contains color helpful to understand the meaning, context, or content of the document, such as documents showing revisions or comments that are distinguished by color or documents with

highlighting or other elements that do not show up in gray scale, or would aid in the presentation of an issue to the Court or jury.

**F. Redactions.**

Other than as permitted by this Order or the protective order entered in this litigation, no redactions for relevance may be made within a produced document or ESI item. Any redactions shall be clearly indicated on the face of the document, with each redacted portion of the document stating that it has been redacted, and a metadata field shall indicate that the document contains redactions. In the event that a Producing Party believes in good faith that a document or discrete group of documents contain highly sensitive information that is irrelevant to this litigation which is apparent on the face of the document(s), the Parties agree to meet and confer prior to redacting any information about limited redactions to otherwise responsive document(s). Where a responsive document contains both redacted and non-redacted content, the Producing Party shall produce the remainder of the non-redacted portions of the document and the text/OCR corresponding to the non-redacted portions. TIFFs of redacted ESI shall include all non-redacted elements and formatting which are visible in any view of the document in its native application, including comments, revision marks, speaker notes, or other user-entered data which are visible in any view of the document in its native application. Email header information (e.g. date, subject line, etc.) shall not be redacted unless it is independently privileged. Spreadsheet files requiring redaction, including without limitation Microsoft Excel files, will be redacted natively.

**G. Databases and Structured Data.**

The Parties will meet and confer in good faith to address the production and production format of any relevant data contained in a databases, structured data, collaboration tools, document management systems, cloud service providers, and other proprietary or third-party applications. The Parties will cooperate in the exchange of information concerning any such sources of relevant data to facilitate discussions on productions and production format. If the Parties cannot reach agreement, the matter may be submitted to the Court for resolution.

**H. Paper Documents.**

In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (*i.e.*, paper documents should be logically

unitized). In the case of an organized compilation of separate documents – for example, a binder containing several separate documents behind numbered tabs – the document behind each tab should be scanned separately, but the relationship among the documents in the compilation should be reflected in the proper coding of the beginning and ending document and attachment fields. The Parties will make their best efforts to unitize the documents correctly.

**I. De-duplication.**

A Party is only required to produce a single copy of a responsive document. To the extent identical copies of documents appear in the files of a Custodian, the Producing Party shall attempt to produce only one such identical copy across all Custodians but will identify to the Requesting Party all Custodians who were in possession of such identical copies.

The Parties shall make reasonable efforts to de-duplicate ESI. ESI produced by the Parties shall be globally de-duplicated across all collected custodial and non-custodial sources. Documents are considered exact duplicates if a document family or stand-alone file has a matching MD5 or SHA-1 hash value as compared against the same document type (i.e., family or stand-alone file). The Parties shall calculate deduplication hash values for emails on the concatenated values set forth in and in accordance with the documentation specifications of the disclosed deduplication tools to be used in this Litigation (i.e., RelativityOne, Relativity Server, and Nuix); however, if Nuix is used, the Producing Party shall select the optional field "Include Bcc" as an additional field to add to the default ones. The Parties shall not withhold from production near-duplicates without meeting and conferring on this issue. The names of all custodians and non-custodial sources who were in possession of a document prior to deduplication will be populated in the ALL CUSTODIANS metadata field, separated by semicolons. The original file paths of all iterations of a document prior to deduplication will be populated in the ALL FILE PATHS metadata field of the produced version. Multiple file paths will be separated by semi-colons, in the order corresponding to the order of names in ALL CUSTODIANS. Emails collected from container files (e.g., *.pst's), must include the original file paths of the container files and the location of the emails within the folder structure of the mail container/.pst from which it was collected.

**J. De-NISTing.**

Electronic files will be De-NISTed, removing commercially available operating system and

application file information contained on the current NIST file list.

**K. Embedded Files.**

Embedded files, except for images embedded in emails, are to be produced as family groups. Embedded files should be assigned Bates numbers that directly follow the Bates numbers on the documents within which they are embedded.

**L. Dynamic Fields.**

To the degree technically feasible, documents with dynamic fields for file names, dates, and times will be processed to show the field code (*e.g.*, "[FILENAME]"), rather than the values for such fields existing at the time the file is processed.

**M. Parent-Child Relationships.**

Parent-child relationships (the association between an attachment and its parent document or between embedded documents or linked internal or non-public documents and their parents) shall be preserved. Attachments should be consecutively produced with the parent document.

**N. Family Groups.**

A document and all other documents in its attachment range, emails with attachments, files with extracted embedded OLE documents, and email or other documents together with any documents referenced by document stubs, or via links to internal or non-public document sources within those emails or other documents, all constitute family groups. If any member of a family group is produced, all members of that group must also be produced unless stated otherwise herein or logged as privileged.

**O. Pointer Hyperlinks.**

a. **Initial Collection**. Parties will use reasonable efforts to collect Documents linked in other Documents via internal hyperlinks, also known as modern attachments, that reside on a system within a Producing Party's custody, possession, or control (e.g., such as an internal document management system, Google Drive, Google Docs, SharePoint, Office365, Slack, or similar document hosting and collaboration service) to the extent that such linking can be done automatically and without undue burden through the Producing Party's existing collection tools or processes. To the extent possible, where the linked file is automatically collected pursuant to this paragraph, the linked file shall be produced as part of the same family group as the Document that contains the hyperlink, with the hyperlinked Document treated as a

child/attachment to the parent Document containing the link.

b. **Meet and Confer for Manually Matching**. Where a Requesting Party identifies particular hyperlinks in produced documents that it believes reference potentially relevant, non-produced documents, the Requesting Party may submit a list of such hyperlinks to the Producing Party, identifying for each: (i) the Bates number of the document containing the hyperlink, and (ii) the URL or link text of the hyperlink. Upon receipt of such a list, the Producing Party will undertake reasonable efforts to locate the hyperlinked document(s) at the identified location and will either (i) identify the corresponding document by Bates number if already produced, or (ii) produce any responsive, non-privileged, and not-yet-produced document located as a result of that search, subject to applicable privilege and confidentiality designations. The number of hyperlinks identified by a Requesting Party under this subparagraph shall be reasonable, proportional to the needs of the case.

**c. Metadata Linking Parent Documents and Attachments.** To the extent possible, links shall not be broken and the referenced files should not be separated for production purposes. The Producing Party shall include metadata fields (or their functional equivalent) sufficient to preserve and identify the parent-child relationship between the document containing the hyperlink and its linked file.

**P. Metadata To Be Produced.**

Each producing party shall use methods of collection and processing that preserve the integrity of document metadata. The metadata fields detailed in **Appendix A** should be produced for each document to the extent that such information is available or, in the case of metadata created during processing such as Bates numbers created at the time of collection and processing, except that if a field contains privileged information, that privileged information may be redacted and noted in a corresponding privilege log. This Order does not create any obligation to create or manually code fields that are not automatically generated by the processing of the ESI, or that do not exist as part of the original metadata of the document; provided, however, that the producing party must populate, where possible, the (i) BegBates, (ii) EndBates, (iii) BegAttach, (iv) EndAttach, (v) ProdVol, (vi) AllCustodians, (vii) NativeFileLink fields, if applicable, (viii) TextPath, (ix) HashValue, (x) Redaction, and (xi) Confidentiality designation. These fields should be populated for all produced ESI, as well as paper documents converted to electronic form, regardless of whether the fields can be populated pursuant to an automated process.

**Q. Production Delivery.**

Unless otherwise agreed, documents and ESI will be produced via secure FTP site or similar electronic transmission format. If the data volume is such that electronic transmission of the production is impracticable the production will be delivered on an encrypted external hard drive to a location designated by the Receiving Party. Production media should have an alphanumeric volume name; if a hard drive contains multiple volumes, each volume should be contained in an appropriately named folder at the root of the drive. Volumes should be numbered consecutively (ABC001, ABC002, etc.). Deliverable media should be labeled with the name of this action, the identity of the Producing Party, and the following information: Volume name, production range(s), and date of delivery.

**R. Email Threading.**

A Producing Party may use email threading analytics to suppress lesser-inclusive email messages ("thread members") and produce only the most-inclusive message in a thread ("Last-in-Time Email"), together with all attachments and family members, subject to this Section.

An email is lesser-inclusive, and may be suppressed, only if **all** of the following are true: (a) the entire body text, including any inline content, is contained within the Last-in-Time Email; (b) all participants in the suppressed message (From, To, CC, and BCC) appear in the same fields of, or are otherwise reflected in, the Last-in-Time Email or its produced metadata; (c) the subject line is identical or differs only by a standard reply/forward prefix; and (d) every attachment to the suppressed message is attached to the Last-in-Time Email or is separately produced.

If a thread member contains any data not contained in the Last-in-Time Email, it is not lesser-inclusive and shall be produced. This includes, without limitation: (a) attachments or embedded objects not present in the later message; (b) BCC recipients; (c) differing or altered body text, including inline replies or edits to quoted text; (d) different subject lines beyond reply/forward prefixes; (e) different sender or recipient lists; and (f) privilege redactions or other redactions applied differently across messages. Branches of a thread (where replies diverge) shall be treated as separate threads, each with its own Last-in-Time Email.

Suppression applies at the family level. A Producing Party shall not suppress an attachment merely because an identical-looking file appears elsewhere unless the attachment is a true duplicate by hash value

and the parent email is also produced or suppressed under this Section. Unique attachments to suppressed thread members shall be produced with their parent emails.

The Producing Party will honor reasonable requests to produce lesser inclusive copies of a Last In Time Email or other earlier chains of emails otherwise excluded by email thread suppression.

**S. Lost, Destroyed, or Irretrievable ESI.**

If a Producing Party learns that responsive ESI that once existed was lost, destroyed, or is no longer retrievable, the Producing Party shall explain where and when the responsive ESI was last retrievable in its original format and disclose the circumstances surrounding the change in status of that responsive ESI, whether that information is available from other sources, and whether any backup or copy of such original responsive ESI exists. Nothing in this Section limits any Party's rights or remedies under Fed. R. Civ. P. 37(e).

**T. Exception Files.**

The Parties will meet and confer to address Documents that present imaging or form production problems (including encrypted and/or protected files identified during the processing of ESI).

**U. Non-Party Documents.**

A Party that issues a Non-Party subpoena ("Issuing Party") shall include a copy of this Order with the subpoena and state that (1) the subpoenaed Non-Party should produce Documents in response to the subpoena to all Parties; and (2) the Parties to this Litigation have requested that Non-Parties produce Documents in accordance with the specifications set forth herein. If a subpoenaed Non-Party produces Documents to the Issuing Party but does not produce those Documents to other Parties, the Issuing Party shall produce such Documents to those other Parties within 14 days of receiving the Documents, except where the Documents are to be used in a deposition, in which case the Issuing Party shall produce such Documents to all other Parties no later than three (3) days prior to the deposition, or as soon as reasonably practicable if such production occurs thereafter. Nothing in this Order is intended or may be interpreted to narrow, expand, or otherwise affect the rights of the Parties or Third Parties to object to a subpoena. If a Non-Party production is not Bates-stamped, the Parties will meet and confer to agree upon a format for designating the documents with a unique Bates Number prefix.

**APPENDIX A**

**METADATA FIELDS**

| Field | Description | Email | Non- Email ESI |
|---|---|---|---|
| Production Number Begin | Beginning page production number | x | x |
| Production Number End | Ending page production number | x | x |
| Attachment Begin | Beginning page of attachment range | x | x |
| Attachment End | Ending page of attachment range | x | x |
| Attachment Count | Number of attachments. | x | x |
| Custodian | Name of the custodian or repository name of the document produced - Last Name, First Name format | x | x |
| AllCustodians | List of all custodians associated with Document, i.e. “Custodian” + “Other Custodian” values delimited by semi-colon. | x | x |
| File Name | File name of document | x | x |
| File Extension | File extension of document | x | x |
| Email Outlook Type | Type of Outlook item, e.g. email, calendar item, note, task | x | |
| Page Count | For documents produced in TIFF form, number of pages in the document. For documents produced in native, page count will be 1 (for placeholder). | x | x |
| Document Title | Title field extracted from the Metadata of a non-Email document | | x |
| Author | Document author of a non-Email document. | | x |
| Email Subject | Subject of email | x | |

| Field | Description | Email | Non- Email ESI |
|---|---|---|---|
| From | Email sender | x | |
| To | Email recipients | x | |
| CC | Email copyees | x | |
| BCC | Email blind copyees | x | |
| Importance | High Importance — indicates Priority E-mail | x | |
| PAGE COUNT | Number of pages in the document | x | x |
| ATTACHNAMES | Names of each individual Attachment, separated by semi-colons | x | |
| ATTACHCOUNT | Number of attachments to an e-mail | x | |
| Date-Time Sent | Date sent (mm/dd/yyyy hh:mm:ss format) | x | x |
| Date-Time Received | Date received (mm/dd/yyyy hh:mm:ss format) | x | x |
| Date-Time Created | Creation date (mm/dd/yyyy hh:mm:ss format) | | x |
| Last Modified By | Last person who modified (saved) a document | | x |
| Date-Time Last Modified | Last modification date (mm/dd/yyyy hh:mm:ss format) | | x |
| Hash Value | Unique electronic signature of email or electronic file used for deduplication. | x | x |
| Production Volume | Production volume name | x | x |
| Confidentiality | Confidentiality designation pursuant to the Protective Order | x | x |
| Redacted | Descriptor for documents that have been redacted (<yes> or <no>) | x | x |
| Native Link | Path to produced native file used for linking. | x | x |

| Field | Description | Email | Non- Email ESI |
|---|---|---|---|
| Extracted Text Link | Path to produced extracted text file used for database linking. | x | X |
| MSGID | Email system identifier assigned by the host email system. This value is extracted from parent message during processing | x | |
| PARENTMSGID | Where the item is an email which is a REPLY or FORWARD, the MSGID of the original email which was REPLIED to or FORWARDED | x | |
| CONVERSATIONID | Identifier used to associate messages within the same thread or conversation. | x | |
| APPLICATION | Commonly associated application for the specified file type. | x | x |
| FILEPATH | Original file/path of the location where the item was located at the time of collection. This should include location, and, for e-documents and e-attachments, file name, and file extension. Folder names and path should be included, and, for emails and attachments collected from a container such as a .pst, the full folder path within the container. Any container names should be included in the path. | x | x |
| ALLFILEPATH | List of all original file/path of the locations where the item was located at the time of collection | x | x |

| Field | Description | Email | Non- Email ESI |
|---|---|---|---|
| | delimited by semi-colon. This should include location, and, for e-documents and e-attachments, file name, and file extension. Folder names and path should be included, and, for emails and attachments collected from a container such as a .pst, the full folder path within the container. Any container names should be included in the path. | | |
| HASREVISIONS | Y if a Word document with revisions, otherwise N or empty | | x |
| HASCOMMENTS | Y if a Word or Excel document with comments, otherwise N or empty | | x |
| HASHIDDENTEXT | Y if a Word document with hidden text, otherwise N or empty | | x |
| HASHIDDENSLIDES | Y if a PowerPoint document with hidden slides, otherwise N or empty | | x |
| HASSPEAKERNOTES | Y if a PowerPoint document with speaker's notes, otherwise N or empty | | x |
| HASHIDDENROWS | Y if a Excel document with hidden rows, otherwise N or empty | | x |
| HASHIDDENCOLUMS | Y if a Excel document with hidden columns, otherwise N or empty | | x |
| HASHIDDENWORKSHEETS | Y if a Excel document with hidden worksheets, otherwise N or empty | | x |
| HASVERYHIDDENWORKSHEETS | Y if a Excel document with very hidden worksheets, otherwise N or empty | | x |

| Field | Description | Email | Non- Email ESI |
|---|---|---|---|
| DocumentType | Descriptor for the type of document: **"E-document"** for electronic documents not attached to e-mails; **"E-mail"** for all e-mails; **"E-attachment"** for files that were attachments to e-mails; and **"Physical"** for hard copy physical documents that have been scanned and converted to an electronic image. | x | x |
| Time zone | The time zone used to process the document. | x | x |

IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

DATED: October 27, 2026

*/s/ Christopher L. Ayers*

Christopher L. Ayers, Esq. (*pro hac vice*)
**SBAITI & COMPANY NJ LLC**
100 Mulberry Street
3 Gateway Center, Suite 1102
Newark, NJ 07102
Tel: (973) 954-2000
Email: Chris.Ayers@sbaitilaw.com

Mazin A. Sbaiti, Esq. (SBN 275089)
**SBAITI & COMPANY PLLC**
3102 Maple Avenue, Suite 400
Dallas, TX 75201
Tel: (214) 214-3400
Email: mas@sbaitilaw.com

***Attorneys for Plaintiffs Christopher Taylor and Krystal Chambers***

Kelly K. Iverson (*pro hac vice*)
**LYNCH CARPENTER, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Tel: (412) 322-9243
Email: kelly@lcllp.com

(Eddie) Jae K. Kim (SBN 236805)
Tiffine E. Malamphy (SBN 312239)
**LYNCH CARPENTER LLP**
117 East Colorado Boulevard, Suite 600
Pasadena, CA 91105
Tel: (213) 723-0707 / Fax: (858) 313-1850
Email: ekim@lcllp.com
Email: tiffine@lcllp.com

A. Brooke Murphy (*pro hac vice*)
**MURPHY LAW FIRM**
4116 Will Rogers Parkway, Suite 700
Oklahoma City, OK 73108
Tel: (405) 389-4989
Email: abm@murphylegalfirm.com

***Attorneys for Plaintiff Bijoy Shroff***

Steven A. Schwartz (*pro hac vice)*
Beena M. McDonald (SBN 365776)
**CHIMICLES SCHWARTZ KRINER & DONALDSON-SMITH LLP**
361 West Lancaster Avenue
Haverford, PA 19041
Tel: (610) 645-4720 / Fax: (610) 649-3633
Email: sas@chimicles.com
Email: bmm@chimicles.com

***Attorneys for Plaintiff Carmen Tejada***

DATED: October 27, 2026

*/s/ Michael A. Glick, P.C.*

Christopher W. Keegan, P.C. (SBN 232045)
**KIRKLAND & ELLIS LLP**
555 California Street, 27th Floor
San Francisco, CA 94104
Tel: (415) 439-1400
Email: chris.keegan@kirkland.com

Gregg F. LoCascio, P.C. (*pro hac vice*)
Michael A. Glick, P.C. (*pro hac vice*)
Leah A. Hamlin (SBN 317957)
**KIRKLAND & ELLIS LLP**
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel: (202) 389-5000 / Fax: (202) 389-5200
Email: glocascio@kirkland.com
Email: michael.glick@kirkland.com
Email: leah.hamlin@kirkland.com

***Attorneys for Defendants Abbott Diabetes Care Inc. and Abbott Laboratories***

## SIGNATURE ATTESTATION

Pursuant to Civ. L. Rule 5-1(i)(3), I, Michael A. Glick, hereby attest that each of the Signatories have concurred in the filing of this document.

*/s/Michael A. Glick, P.C.*
Michael A. Glick, P.C.

PURSUANT TO STIPULATION, IT IS SO ORDERED.

DATED: 10/27/2026

Hon. Haywood S. Gilliam, Jr.
United States District Judge